UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANTONIO CRUZ CARDENAS,

                Petitioner,

   v.

B. SCOTT, *et al.*,

                Respondents.

CASE NO. 2:25-cv-00064-TSZ-GJL

REPORT AND RECOMMENDATION

Noting Date: **May 27, 2025**

      This federal habeas action has been referred to United States Magistrate Judge Grady J. Leupold. In his Petition filed pursuant to 28 U.S.C. § 2241, Petitioner Antonio Cruz Cardenas seeks immediate release from immigration detention or, in the alternative, a second bond hearing. Dkt. 1. Petitioner alleges his detention is unreasonably prolonged and may not continue without additional procedural protections. *Id.* Respondents United States Immigration and Custom Enforcement ("ICE"), ICE Field Office Director, ICE Director, United States Department of Homeland Security, and United States Attorney General moved to dismiss the Petition, arguing that Petitioner has not met his burden of "providing good reason to believe that

1    there is no significant likelihood of his removal in the reasonably foreseeable future," Dkt. 5 at 8,

2    nor is Petitioner entitled to an additional bond hearing as a matter of due process. *Id.* at 8–12.[1]

3          The undersigned agrees with Respondents and concludes that, at this time, Petitioner has

4    not shown his removal is unlikely to occur within a reasonable period, and he is not entitled to

5    additional procedural protections regarding his continued detention. It is therefore recommended

6    that Respondents' Motion to Dismiss (Dkt. 5) be **GRANTED**, the Petition be **DENIED**, and this

7    action be **DISMISSED without prejudice**.

8                            **I.    BACKGROUND**

9          Petitioner is a native and citizen of Mexico, who entered the United States without lawful

10   status on an unknown date. Dkt. 6 at 1 (De Castro Declaration). In 2000, Petitioner was

11   convicted of first-degree murder following a jury trial in Los Angelos County, California and

12   sentenced to 25 years in California state prison. Dkt. 7-2 (Exhibit B). After serving his sentence,

13   Petitioner was transferred to DHS custody to begin immigration proceedings. *See* Dkt. 7-1

14   (Exhibit C).

15   **A.    Immigration Proceedings**

16         Petitioner entered into DHS custody on July 27, 2023. *Id.* That same day, he was served

17   with a Notice of Intent to Issue a Final Administrative Removal Order ("FARO") pursuant to 8

18   U.S.C. § 1228(b), alleging he was removable based on a conviction for an aggravated felony as

19   defined by 8 U.S.C. § 1101(a)(43)(A). Dkt. 7-4 (Exhibit D). The Notice also informed Petitioner

20   of his eligibility to request withholding of removal under 8 U.S.C. § 1231(b)(3) or the

21   Convention Against Torture. *Id.*

22

---

23   [1] Although it does not impact the outcome recommended herein, the undersigned notes that Respondent B. Scott—
     the superintendent of Northwest ICE Processing Center ("NWIPC"), where Petitioner is currently detained—has not
24   joined in the Motion to Dismiss or otherwise participated in this case. *See docket*. Nevertheless, the Government's
     interests are sufficiently represented without additional input from the NWIPC superintendent.

On August 11, 2023, DHS issued the FARO. Dkt. 7-5 (Exhibit E). Based on the administrative record, DHS found Petitioner was not a lawful permanent resident, citizen, or national of the United States and found he was removable under 8 U.S.C. § 1227(a)(2)(A)(iii). *Id.* Based on these findings, DHS ordered Petitioner's removal to Mexico or to an alternative country designated under the INA. *Id.*; *see also* Dkt. 7-6 (Exhibit F).

Petitioner did not contest the basis for his removal and, instead, initiated withholding-only proceedings by claiming fear of persecution if he were removed to Mexico. Dkt. 7-7 (Exhibit G); *see also* 8 C.F.R. § 238.1(f)(3). After conducting a reasonable fear interview, an asylum officer determined Petitioner did not demonstrate a reasonable fear of persecution. *Id.* An Immigration Judge ("IJ") reviewed and affirmed that determination in September 2023. Dkt. 7-8 (Exhibit H); *see also* Dkt. 6 at 2 (De Castro Declaration).

Petitioner filed a Petition for Review ("PFR") of this determination and a motion to stay removal with the Ninth Circuit Court of Appeals on October 4, 2023. *Cruz Cardenas v. Bondi*, No. 23-2580, Dkts. 1, 2 (9th Cir., filed Oct. 4, 2023) (unpublished). In January 2025, the Ninth Circuit denied the PFR but granted a stay of removal until it issued the mandate in Petitioner's case. *Id.* at Dkts. 50, 52.

**B.    Detention Reviews and *Aleman Gonzalez* Bond Hearing**

Throughout his immigration proceedings, Petitioner's detention has been subject to review by ICE, an IJ, and the Board of Immigration Appeals. *See* Dkt. 6 at 2 (De Castro Declaration).

First, in November 2023, ICE issued a Decision to Continue Detention after evaluating Petitioner's file, submitted materials, and the relevant factors under 8 C.F.R. §§ 241.4(e)–(g). Dkt. 7-9 (Exhibit I).

Next, an IJ reviewed Petitioner's detention in January 2024 at a bond hearing held pursuant to *Aleman Gonzalez v. Barr*, 955 F.3d 762 (9th Cir. 2020), *rev'd*, 596 U.S. 543 (2022). Dkt. 6 at 2 (De Castro Declaration). At that hearing, the Government bore the burden of proving by clear and convincing evidence that Petitioner posed a danger or flight risk. *Id.*; Dkt. 7-10 (Exhibit J). Petitioner was represented by counsel and permitted to submit evidence in support of his position. *Id.*; Dkt. 7-11 (Exhibit K). The IJ considered both the nature of Petitioner's underlying offense and his post-conviction conduct. *Id.* The IJ noted Petitioner's youth and other mitigating features of his underlying offense. *Id.* Nevertheless, the IJ emphasized that Petitioner remained active in prison gang activities until at least 2018. *Id.* Ultimately, the IJ found that Petitioner posed a danger to the community and a significant flight risk while further concluding that no bond or release conditions could adequately address these concerns. *Id.*; *see also* Dkt. 7-10 (Exhibit J). The Board of Immigration Appeals reviewed and affirmed the IJ's decision in April 2024. Dkt. 7-12 (Exhibit L).

Finally, in May 2024, ICE issued a second Decision to Continue Detention following a personal interview, a review of Petitioner's updated file and any evidence submitted by him. Dkt. 7-13 (Exhibit M). ICE also noted that Petitioner's removal was likely to occur in the reasonably foreseeable future. *Id.*

**C.    Federal Habeas Petition**

Petitioner initiated this action on January 1, 2025, by filing a Petition challenging the lawfulness of his continued detention. Dkt. 1. Respondents moved to dismiss the Petition, arguing that Petitioner's detention pending removal remains lawful. Dkt. 5. After receiving an extension of time, Petitioner responded in opposition to the Motion to Dismiss, and Respondents replied in support. Dkts. 10, 11. As such, Respondents' Motion to Dismiss is now fully briefed and ready for consideration.

## II.    DISCUSSION

Although not explicitly designated as such in his Petition, Petitioner effectively presents arguments in support of two separate Grounds for relief. The first argues Petitioner's detention has extended for an unreasonably prolonged period without justification necessitating his immediate release (hereinafter "Ground One"). *See* Dkt. 1 at 9–10, 16 (arguing continued detention has become unreasonable and requesting immediate release). The second argues Petitioner's continued detention without an additional bond hearing violates constitutional guarantees of due process (hereinafter "Ground Two"). *See* Dkt. 1 at 5, 8–16 (arguing due process requires he be provided a bond hearing). As set forth below, the undersigned concludes neither Ground warrants federal habeas relief at this time.

### A.    Unreasonable Detention (Ground One)

The INA, codified at 8 U.S.C. §§ 1101 through 1537, governs the detention and release of non-United States citizens during and following their removal procedures. During all stages of removal, the Secretary of Homeland Security ("Secretary") is responsible for detaining noncitizens. *See* Homeland Security Act of 2002, Pub. L. No. 107-296 § 441(2), 116 Stat. 2135, 2192 (2002) (codified at 6 U.S.C. §§ 251, 291).

Throughout his Petition and Response, Petitioner indicates that his removal proceedings are ongoing and makes repeated references to INA provisions and caselaw concerning prolonged detention prior to the issuance of a final order of removal. *See* Dkts. 1, 10. But Petitioner is not awaiting a final order of removal, and the ongoing proceedings he references do not concern *whether* he may be removed but *to where* he may be removed pursuant to his FARO. *See Cruz Cardenas*, No. 23-2580, at Dkt. 52 (reviewing Petitioner's PFR concerning withholding of removal to Mexico based on fear of persecution). Therefore, the relevant INA provision for

1  Petitioner's current detention is 8 U.S.C. § 1231, which takes effect once a FARO has been

2  issued.

3      Under § 1231, the first 90-day period following the entry of a FARO is known as the

4  "removal period." 8 U.S.C. § 1231(a)(1)(A). During the removal period, the Secretary "shall

5  remove the [noncitizen] from the United States." 8 U.S.C. § 1231(a)(1). Once the 90-day

6  removal period has expired, however, detention of unremoved noncitizens is no longer

7  mandatory. Instead, continued detention is committed to the discretion of the Secretary. 8 U.S.C.

8  § 1231(a)(6). There is no textual limit on the Secretary's discretion to detain certain noncitizens

9  beyond the initial 90-day removal period. However, in *Zadvydas v. Davis*, the Supreme Court

10  interpreted § 1231(a)(6) to authorize the detention of noncitizens subject to removal orders only

11  for a period "reasonably necessary to secure [their] removal."533 U.S. 678, 699 (2001). By

12  interpreting the INA in this way, the Supreme Court avoided a "serious constitutional threat"

13  posed by granting the discretionary authority to order noncitizens detained indefinitely and,

14  perhaps, permanently. *Id.*

15      Under *Zadvydas*, an order of detention during the first six months after entry of a final

16  removal order is presumptively reasonable. *Id.* at 701. Beyond this period, if the noncitizen

17  provides "good reason to believe that there is no significant likelihood of removal in the

18  reasonably foreseeable future," the burden shifts to the Government to show removal remains

19  likely within a reasonable timeframe. *Id.* If the Government fails to submit sufficient rebuttal

20  evidence showing the likelihood of removal, then the noncitizen is entitled to habeas relief. *Id.*

21      To assess the likelihood of removal, courts consider a variety of factors such as the

22  Government's efforts to obtain travel documents, the noncitizen's cooperation through the

23  removal process, the receiving country's cooperation, and any specific barriers or delays

24  impacting the prospect of removal. *See, e.g., Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir.

1    2008); *Atikurraheman v. Garland*, No. 2:24-cv-262-JHC-SKV, 2024 WL 2819242 (W.D. Wash.

2    May 10, 2024), *report and recommendation adopted*, 2024 WL 2818574 (W.D. Wash. June 3,

3    2024).

4          Here, there is no evidence or allegation that Petitioner's detention was impacted by a

5    specific barrier to his removal, lack of diligence by the Government in securing his removal, lack

6    of cooperation from his receiving country, or any other circumstance providing "good reason" to

7    question the likelihood of his removal. *See, e.g.*, *Singh v. Whitaker*, 362 F. Supp. 3d 93, 101–02

8    (W.D.N.Y. 2019) (finding removal unlikely and detention indefinite where the Government was

9    unable to secure necessary travel documents to effectuate removal for more than a year after

10   final order of removal was issued). Instead, the greater portion of Petitioner's time in detention

11   resulted from his request for withholding of removal to Mexico. *See* Dkt. 7-7 (initial finding that

12   Petitioner did not have reasonable fear of persecution made within first three months of his

13   detention).

14         While Petitioner indicates that he intends to file additional challenges to his FARO,

15   which would further extend the duration of his detention, he has failed to establish good reason

16   to believe his detention will continue for an indefinite period once all legal challenges to his

17   removal have been exhausted. Dkt. 10 at 2 (arguing detention is likely to continue as Petitioner

18   intends to "reopen immigration case" and underlying "felony conviction").

19         Even if Petitioner could show good reason to question the likelihood of his removal, the

20   Court concludes Respondents have submitted sufficient evidence to rebut Petitioner's showing

21   and have demonstrated that his removal is reasonably likely to occur in the foreseeable future.

22   Most importantly, Respondents' evidence shows that noncitizens are routinely removed to

23   Mexico and, once the stay on Petitioner's removal is lifted, there will be little difficulty in

24   effectuating his removal along the normal course. Dkt. 6 at 3 (De Castro Declaration). In

addition, a docket review shows the Ninth Circuit issued the mandate in Petitioner's case on

April 8, 2025,[2] which lifted the stay on his removal. *See Cruz Cardenas*, No. 23-2580, at Dkt.

57.

Thus, in light of Respondents' evidence and court records, the Court finds there is

currently no reason to believe that Petitioner's removal to Mexico is unlikely to occur in the

reasonably foreseeable future. Rather, the Court finds that Petitioner's release from immigration

detention remains likely within a timeframe reasonably necessary to secure his removal.

Accordingly, the undersigned concludes Petitioner is not entitled to habeas relief on Ground

One.

**B.      Additional Bond Hearing (Ground Two)**

For noncitizens, like Petitioner, who are detained pursuant to a final order of removal

under § 1231, there is no statutory entitlement to a bond hearing. *See* 8 U.S.C. § 1231; *Johnson*

*v. Arteaga-Martinez*, 596 U.S. 573, 584 (2022) (finding no statutory right to bond hearing under

§ 1231(a)(6) and declining to address whether due process would require the same). Further, it

remains an open question whether, and under what circumstances, due process requires

additional bond hearings for immigration detainees subject to a final order of removal. *Id.*

Nevertheless, the Court exercises an abundance of due process caution and examines whether an

additional bond hearing is warranted in this case. *See Lopez Reyes v. Bonnar*, 362 F. Supp. 3d

762, 775 (N.D. Cal. 2019) ("In the absence of binding authority establishing a categorical right

to a periodic bond hearing, the Court must conduct an individualized due process analysis.")

(quotations omitted).

---

[2] The Court may take judicial notice of court filings and other matters of public record related to the
Petition. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (citing *Burbank–
Glendale–Pasadena Airport Auth. v. City of Burbank,* 136 F.3d 1360, 1364 (9th Cir. 1998)). The Court does take
such judicial notice concerning the mandate issuance.

Where an immigration detainee has previously received a bond hearing, this Court applies the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine whether due process requires an additional bond hearing. *See, e.g.*, *Ortuno-Perez v. ICE Field Off. Dir.*, No. 2:23-cv-344, 2023 WL 5807305 (W.D. Wash. Aug. 1, 2023*), report and recommendation adopted*, 2023 WL 5802516 (W.D. Wash. Sept. 7, 2023) (applying *Mathews* due process analysis to determine whether due process required subsequent bond hearing).

Furthermore, the Ninth Circuit recently applied the *Mathews* test to evaluate whether due process required an additional bond hearing for a noncitizen detained prior to a FARO under § 1226(a). *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). The *Rodriguez Diaz* court noted that other courts regularly apply the *Mathews* test when evaluating due process challenges to immigration detention, observing that *Mathews* "remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz*, 53 F. 4th at 1206–07. The Court therefore relies upon the *Mathews* test, with particular emphasis given to the test's application in *Rodriguez Diaz*.

As explained in *Mathews*, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334. Thus, to determine due process requirements in a given situation, courts balance three factors (1) the private interest affected, (2) the government's interest, and (3) the risk of an erroneous deprivation of the private interest at stake through the procedures used, and the probable value, if any, of additional procedural safeguards. *Id.* at 334–35.

1. <u>Private Interest</u>

"As to the first factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (addressing § 1226(a) detainees) (citation omitted).

1    In this case, Petitioner has been in immigration detention for approximately 21-months,

2    which is comparable to the 18-month detention period considered "prolonged" in *Rodriguez*

3    *Diaz*. Yet, while acknowledging a prolonged detention period weighed in a noncitizen's favor,

4    the court in *Rodriguez Diaz* cautioned that "we cannot simply count [the] months of detention

5    and leave it at that." *Id*. at 1208. Instead, courts must also consider the process a noncitizen

6    received to date, the further process available to him, and whether "detention was prolonged due

7    to his decision to challenge his removal order." *Id*.

8    Given his prolonged detention and interest in being free from confinement, the first factor

9    favors Petitioner. However, because the greater portion of Petitioner's confinement has been

10    devoted to his withholding-only proceedings, this factor is not accorded disproportionate weight.

11    *See id.* at 1210 (noting that, while legal challenges to removal may prolong detention, a "review

12    process following its ordinary course" does not itself create a due process violation). Moreover,

13    Petitioner has already received a bond hearing, and his private interest is "further diminished by

14    the fact that he is subject to an order of removal from the United States." *Id.* at 1208. All

15    considered, the first *Mathews* factor weighs only slightly in Petitioner's favor.

16        2.    Government Interest

17    On the second *Mathews* factor, the Government has legitimate interests in Petitioner's

18    continued detention: assuring prompt execution of his FARO and protecting the public. *Nken v.*

19    *Holder*, 556 U.S. 418, 436 (2009)) ("There is always a public interest in prompt execution of

20    removal orders: The continued presence of an alien lawfully deemed removable…permits and

21    prolongs a continuing violation of United States law."); *Rodriguez Diaz*, 53 F. 4th at 1208 ("The

22    government has an obvious interest in protecting the public from dangerous criminal

23    [noncitizens].") (internal quotations and citations omitted). In *Rodriguez Diaz*, the Ninth Circuit

24    found the Government's interests in this realm are "of the highest order" and "only increase with

the passage of time," explaining that "[t]he longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing [a noncitizen]'s ultimate removal. The risk of a detainee absconding also inevitably escalates as the time for removal becomes more imminent." *Id.* at 1208–09 (citing *Demore v. Kim*, 538 U.S. 510, 519 (2003) (noting that Congress was presented with evidence showing "[d]etention is the key" to efficient removal of noncitizens)).

Here, the Government has a significant interest in prompt execution of Petitioner's FARO and a related interest in mitigating his risk of flight as removal becomes more imminent. Further, the IJ's determination that Petitioner's criminal history and more recent gang involvement made him a danger to the community—a "discretionary judgment" not subject to review—supports the Government's position. *See* Dkt. 7-10 (Exhibit J); Dkt. 7-11 (Exhibit K); *Martinez v. Clark*, 36 F.4th 1219, 1224 (9th Cir. 2022), *cert. granted, judgment vacated on other grounds*, 144 S. Ct. 1339 (2024). Thus, the second factor weighs strongly in the Government's favor.

### 3.    Risk of Erroneous Deprivation/Value of Additional Safeguards

The third and final *Mathews* factor is "the risk of an erroneous deprivation of [private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335.

Here, Petitioner's detention was reviewed at various points following his transfer to DHS custody in July 2023. First, within five months of Petitioner's transfer, ICE performed an individualized custody review and issued a Decision to Continue Detention. Dkt. 7-9 (Exhibit I). A few months later in January 2024, Petitioner received an individualized bond hearing before an IJ at which he was represented by counsel and permitted to submit evidence. *See* Dkt. 7-10 (Exhibit J); Dkt. 7-11 (Exhibit K). The IJ denied bond after determining Petitioner was a danger

to the community and flight risk. *See* Dkt. 7-10 (Exhibit J); Dkt. 7-11 (Exhibit K). Petitioner was afforded an appeal to the BIA, which reviewed and affirmed the IJ's decision in April 2024. Dkt. 7-12 (Exhibit L). Finally, in May 2024, ICE issued another Decision to Continue Detention after interviewing Petitioner and reviewing his file and any evidence he submitted. Dkt. 7-13 (Exhibit M). Overall, this process favorably compares to the procedural protections that the Ninth Circuit found constitutional in *Rodriguez Diaz*, 53 F.4th at 1209–10, 1213.

In that case, the Ninth Circuit held the procedural protections available to § 1226(a) detainees were sufficient to protect individual liberty interests and mitigated the risk of erroneous deprivation. *Id*. Included in these procedures were periodic detention decisions by ICE and the availability of bond hearings before an IJ. *Id*. at 1209–10. Notably, unlike Petitioner here, § 1226(a) detainees bear the burden of demonstrating they would not pose a risk of danger or of flight if released on bond. *See id.* at 1209 (citing 8 C.F.R. §§ 236.1(c)(8), 236.1(d)(1), 1003.19(b)). In this way, the procedures provided to Petitioner offer even greater protection against erroneous deprivation than those deemed constitutional in *Rodriguez Diaz*. *See also id.* at 1210 (noting the procedural protections provided to § 1226(a) detainees were "substantially more extensive" than procedures addressed in prior caselaw).

Another distinguishing characteristic between this case and *Rodriguez Diaz*, is that— unlike § 1226(a) detainees—Petitioner is unable to seek an additional bond hearing by demonstrating materially changed circumstances. *Rodriguez Diaz*, 53 F.4th at 1209 (citing 8 C.F.R. § 1003.19(e)). But this additional procedural safeguard did not control the outcome in *Rodriguez Diaz*, nor does its unavailability control the outcome here. *Id.* at 1209–10 (considering a constellation of procedural protections for detention and removal alike).

Furthermore, Petitioner has not demonstrated changed circumstances bearing on his dangerousness or risk of flight and, instead, argues his recent transfer to the NWIPC in

1  Washington State has made it more difficult for him to contact his attorney and see loved ones

2  located in California. Dkt. 10 at 3. However, Petitioner has not shown that the procedures

3  provided to him thus far have been insufficient to guard against an erroneous deprivation of his

4  liberty.

5          Disagreeing with this result, Petitioner argues he should receive an additional bond

6  hearing because the IJ erred in determining he was a danger to the community. Dkt. 10 at 2–3.

7  Petitioner further alleges that the IJ erred by refusing to consider alternatives to detention. *Id.*;

8  Dkt. 1 at 14–15. However, due process does not require the consideration of alternatives to

9  detention after finding that a noncitizen is a danger to the community. *See Martinez*, 36 F.4th at

10  1231. And, while it is clear Petitioner disagrees with the IJ's finding of dangerousness, his

11  contentions are not reviewable by this Court because he fails to show the IJ committed

12  constitutional or legal error in making this determination. *See Rodriguez Diaz*, 53 F.4th at 1209

13  (9th Cir. 2022) (noting that federal courts have habeas jurisdiction over "questions of law or

14  constitutional questions" but not "an immigration court's determination that a noncitizen is a

15  danger to the community").

16          In short, Petitioner received comparable procedural protections to those that satisfied due

17  process in *Rodriguez Diaz*, 53 F.4th at 1209–10, 1213. Therefore, the third *Mathews* factor

18  weighs in the Government's favor.

19          4.    Weighing the Factors

20          While the first *Mathews* factor weighs slightly in favor of Petitioner, the remaining two

21  *Mathews* factors tilt the balance in favor of the Government. As such, the *Mathews* test supports

22  a finding that Petitioner's detention without an additional bond hearing comports with due

23  process. Accordingly, the undersigned concludes Petitioner is not entitled to habeas relief on

24  Ground Two.

### III.    CONCLUSION

Having concluded that Petitioner is not entitled to immediate release or an additional bonding hearing at this time, the undersigned recommends Respondents' Motion to Dismiss (Dkt. 5) be **GRANTED**, the Petition (Dkt. 1) be **DENIED,** and this action be **DISMISSED without prejudice**.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **May 27, 2025**, as noted in the caption.

Dated this 9th day of May, 2025.

Grady J. Leupold
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14